**Sean F. SAUNDERS, Appellee,**

v.

**Alison D. SAUNDERS, Appellee.**

**Sean F. Saunders, Appellee,**

v.

**Alison D. Saunders, Appellee.**

**Alison F. Saunders, Appellee,**

v.

**Sean D. Saunders, Appellee.**

Superior Court of Pennsylvania.

Argued July 26, 2006.
Filed Sept. 18, 2006.

Donald F. Kohler, Jr., West Chester, for appellant.

Stephen J. Anderer, Philadelphia, for appellee.

BEFORE: MUSMANNO, KLEIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Sean Saunders, father, appeals from the November 21, 2005 Order denying his request that the court deviate from support guidelines and order that mother, primary custodian, pay him child support, since her income is greater, for support of the parties' three minor children.[1] The Order further required father to pay $581.99 per month in child support to mother, $558 in support plus $23.99 for father's eighteen percent share of all unreimbursed medical expenses. We affirm.

¶ 2 The court set forth the factual and procedural history as follows:

---

1. Three separate appeals, one from each lower court docket number, were filed in this matter. The appeals were consolidated and just one issue is before us for consideration.

Alison D. Saunders (hereafter "Mother") and Sean F. Saunders (hereafter "Father") were married on October 10, 1988, and, divorced on March 3, 2005. The parties are the parents of three minor children: Charlotte Rose Saunders (d.o.b.4/13/1994), Christopher Robert Saunders (d.o.b.11/30/1995), and Mary Elizabeth Saunders (d.o.b.1/5/1998). Mother has primary physical custody of the parties' children during the school year with Father having the children every other weekend from Friday at approximately 3:30 p.m. until Sunday at 8:00 p.m., every Thursday evening from approximately 3:30 p.m. until 8:00 p.m. and alternating holidays and seasonal breaks. During the summer, the parties share custody through a week on/week off arrangement.

On July 6, 2001, Mother filed a Complaint for Support for the parties' three minor children. On August 15, 2002, we entered an Order in Support awarding Mother child support in the amount of $622.99 per month effective as of July 6, 2001. From September 1, 2002 forward, we awarded Mother child support in the amount of $610.00 per month. We denied Father's request for alimony *pendente lite* (hereafter "APL"). On September 24, 2002, in light of the Supreme Court's August 20, 2002 ruling in *Mascaro v. Mascaro*, [569 Pa. 255,] 803 A.2d 1186 (Pa.2002) [holding the court should apply the Support Guidelines rather than a *Melzer* analysis when calculating spousal support or APL in cases in which the combined net income of the spouses exceeds $15,000 per month,] Father filed a petition for APL. On February 11, 2003, the Hearing Officer entered her Report and Recommended Order awarding Father $1,831.00 per month in APL. Offset by Father's child support obligation of $610.00 per month, Mother owed Father a net APL award of $1,221.00 per month effective September 1, 2002 forward. On February 20, 2003, Mother filed timely Exceptions to the Recommended Order of the Hearing Officer asserting that the Hearing Officer erred in the application of the APL formula. On February 21, 2003, the Honorable Katherine J. Platt entered an Interim Order effectuating the Hearing Officer's recommendations.

On April 28, 2003, after consideration of Mother's Exceptions to the Report and Recommended Order of the Hearing Officer, Judge Platt determined that Father owed $2,982.00 per month for support of the parties' children. Offset by Mother's APL obligation of $4,908.00 per month, Mother owed Father a net APL award of $1926.00 effective September 1, 2002 forward.

On January 25, 2005, Mother filed a Petition to terminate APL and a Petition to Modify Child Support. On March 21, 2005, Father filed a Petition to Modify Child Support. On March 24, 2005, Father's APL award was vacated effective March 3, 2005, the date of the entry of the parties' Final Decree in Divorce. On November 2, 2005, [the court held a day-long] support hearing to determine the parties' support claims.

Trial Court Opinion, MacElree II, J., 11/21/05, at 1–2 (footnote omitted).

■ ¶ 3 Before the court, father raised only one issue, the same issue raised in these appeals, whether, in light of our Supreme Court's holding in *Colonna v. Colonna*, 581 Pa. 1, 855 A.2d 648 (2004), mother, as primary custodian, has an obligation to pay child support to father, as a deviation from Support Guidelines, when mother's income is far greater than father's. Specifically, mother's gross annual income was stipulated to be $310,342, and

her net monthly income, $18,534, while father's was stipulated to be $67,000 and $4,060, respectively. After hearing all of the evidence, the court found father failed to meet his burden of proving he does not have the assets to provide the children with appropriate housing and amenities during his period of partial custody. Further, it found any lack of funds on his part was due to his poor financial planning and voluntary unemployment over a three and one-half year period. The court also concluded mother's payment of child support to father was not in the best interests of the children. It thus entered the underlying Order denying his petition. These timely appeals followed, to which we apply the following principles:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Samii v. Samii,* 847 A.2d 691, 694 (Pa.Super.2004) (citations omitted).

¶ 4 In *Colonna,* our Supreme Court held that where the incomes of the parents differ significantly, it is an abuse of discretion for the trial court to fail to consider whether deviating from the support guidelines is appropriate, even where the result would be to order child support for a parent who is not the primary custodial parent. *Colonna* at 7, 855 A.2d at 652. The court must apply Pa.R.C.P. 1910.16–5, **Support Guidelines. Deviation,** (b) **Factors,** which provides, in relevant part:

In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligation;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

. . .

(9) other relevant and appropriate factors, including the best interests of the child or children.

*Colonna* at 8, 855 A.2d at 652 *citing* Pa.R.C.P. 1910.16–5(b). The court further directed,

[i]n a case such as the instant matter, the trial court should inquire whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody. We specifically note that the term "appropriate" does not mean equal to the environment the children enjoy while in the custodial parent's care, nor does it mean "merely adequate." The determination of appropriateness is left to the discretion of the trial court, upon consideration of all relevant circumstances.

*Id.*

■ ¶ 5 Some of the pertinent, undisputed, evidence underlying the court's de-

cision is as follows. Prior to his March 2001 lay off, father earned $120,000 per year. From that point until October 2005, he voluntarily remained unemployed and during that period, accrued $85,000 in credit card debt at an interest rate of 28%. Also during that time, he obtained a real estate license but he did not show many homes due to his alleged physical infirmities. Instead, he volunteered extensively, upwards of forty hours per week, for such charitable organizations as Meals on Wheels, the Boy Scouts, and the Great Valley Community Partnership for Healthy Youth. In its August 15, 2002 Support Order, the court determined father's earning capacity to be $75,000 per year. The court further noted that as of the hearing, father lived in a home purchased by his girlfriend and in which he had no legal interest. Trial Court Opinion at 5–6. Father lives in the three-bedroom, two and one-half bath home with his girlfriend and her two daughters. During his periods of custody, one of the parties' children sleeps in a bunk bed in his girlfriend's daughter's bedroom while his remaining two children sleep on the pull-out bed in father's den. The children's clothing is kept in a closet adjacent to the den in which there are three chests of drawers. *Id.* at 7–8. In mother's five-bedroom, four and one-half bath home, each child has his/her own bedroom. *Id.*

¶ 6 Based upon the above evidence, *inter alia,* the court concluded the following:

We find that Father has failed to meet his burden of proving that he does not have the assets to provide the children with appropriate housing and amenities during his period of partial custody. Although Mother undeniably has more assets to provide for her children, we find that Father has the ability to provide his children with appropriate, albeit not equal, housing and amenities during his period of partial custody if he exercises prudent financial planning and action.

We note that Father remained voluntarily unemployed from March 2002 through October 2005. Father's failure to gain employment squandered $250,000 of potential income.[8] Father did not provide credible testimony or evidence that he made a concerted or sustained attempt to find employment during this period. In fact, Father testified that he did not even apply for a part-time job during this time of unemployment. Father was able, however, to volunteer for numerous organizations. As such, during this time of unemployment, Father most certainly had the ability to obtain additional assets through employment, yet he did not. In light of his ability to work during this time period, Father, in seeking support from Mother, is looking for Mother to underwrite his volunteer time and charitable donations. Further, Father has the ability to obtain additional assets to provide the children with appropriate housing and amenities in that he holds a current Real Estate license and is capable of selling homes and earning additional money. Finally, there is no evidence in the record that Father's lack of income negatively impacts Father's relationship with his children.

Moreover, we find that Father has failed to demonstrate that ordering Mother to pay Father a certain sum of money per month is in the best interests of the parties' children. *See [Colonna* at 7, 855 A.2d at 651–52] (noting that requiring children to [live] "vastly different lives depending upon which parent has custody" ... Clearly is not in the best interests of the children"). Father testified that if awarded child support, he would use the money to put an addition onto his girlfriend's residence. We note that Father has no legal, ownership

interest in the residence. Father testified that his girlfriend purchased the house with her individual funds and the house is in Father's girlfriend's name exclusively. Father, in effect, wants us to order Mother to finance improvements to Father's girlfriend's home. This is obviously inappropriate as there is no specific plan or budget for the improvement, nor is there any guarantee that Father's children would ever benefit from the improvement. Father can be removed from the house on thirty days notice.

Further, Father's current debt and the 28% interest attached thereto is clearly the product of his own poor financial planning. Father would have us penalize Mother for his mishandling of his finances. Father should not be able to use his own poor planning as an affirmative sword against Mother using the *Colonna* analysis. Father wants Mother to underwrite his own financial failings and shortcomings.[9] This is not support for the children and this is not in the children's best interests, as the money would benefit Father and Father's creditors and not Father's children.

### CONCLUSION

Father has failed to prove that he lacks the assets to provide adequate housing and amenities for his children during his period of partial, physical custody. Father's lack of funds to date is due to Father's poor financial planning and his voluntary lack of employment over a three and a half year period of time. Moreover, we do not believe that obligating Mother to pay Father child support would be in or further the best interests of the children. Therefore, we do not believe that Father has met his burden under *Colonna* to support a deviation from the Support Guidelines.

Accordingly, the parties' stipulation as to support will be entered as a Final Order in this matter.

8. We note that had Father worked for the 3½ years he was unemployed, at the assigned earning capacity of $75,000, he would have earned approximately $250,000 gross.

9. We note that Father's interest expense on his $85,000.00 credit card debt at 28% is $23,800.00 per year. This is more than double Mother's vacation costs and undoubtedly could have been used towards housing or other amenities for the parties' children had father aptly planned his finances.

Trial Court Opinion at 9–11.

¶ 7 Appellant contends the court abused its discretion and misapplied the holding in *Colonna*. He contends "the thrust of the *Colonna* decision revolved around the disparity in the parties' incomes" and argues that is the most important consideration in this case. Appellant's brief at 10. He contends that because of this disparity in income, he "could never offer his children an environment which the children have been accustomed to living with Appellee ... [; thus,] Appellant should receive child support from Appellee." *Id.* at 8. In sum, appellant contends "the trial court should have given consideration to the disparate incomes of the parties and awarded child support to Appellant." *Id.* at 10. He also complains the court erred by focusing on appellant's unemployment and argues the court's calculation that he lost $250,000 of potential income during this period was speculative, but in any event, wife still earned four times that amount in the same period. *Id.* at 9. In addition, father's volunteer work during that time provided him experience that led to his current employment. *Id.* Further, he contends the court's emphasis on his debt was only one consideration and the court abused its discretion in placing such a strong emphasis on it.

¶ 8 Appellant misapprehends the holding of *Colonna*. He would have the courts of

this Commonwealth simply grant a non-custodial parent child support any time there is a significant disparity in income such that the custodial parent earns more money. That is not the holding of *Colonna*. The *Colonna* Court concluded "a parent with primary custody *may* be ordered to pay child support to a parent with partial custody[.]" *Colonna* at 9, 855 A.2d at 652 (emphasis supplied). The trial court has broad discretion and must consider "all relevant circumstances" in making this determination. *Id.* at 8, 855 A.2d at 652.

¶ 9 We find that here, the court committed no abuse of its very broad discretion and committed no error of law. First, we note the court, in determining whether it was appropriate to deviate from the support guidelines, noted it was required to consider, and did consider, the factors as set forth in Pa.R.C.P. 1910.16–5(b). *See* Trial Court Opinion at 4–9. Further, the court considered, as it also is required to do, whether father, as the non-custodial parent, has sufficient assets to provide the children with appropriate housing and amenities during his period of partial custody. Based on the evidence presented, evidence father does not dispute, the court concluded father has the ability to provide his children with appropriate assets and amenities, but to date has squandered many of his assets and opportunities to provide more for his children. It decided not to penalize mother for father's shortcomings. Further, the court noted that if it were to grant father support, father's intended use of the money might not even benefit the children. Employing our deferential standard of review, we find no abuse of discretion or error of law.

¶ 10 Order affirmed.