J-A30040-19

2020 PA Super 17

| T.M.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.J.W. | : | |
| | : | |
| Appellant | : | No. 817 MDA 2019 |

Appeal from the Order Entered May 7, 2019
In the Court of Common Pleas of Montour County Civil Division at No(s):
DR-00164-18,  PACSES No. 044117060

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED JANUARY 31, 2020**

Appellant, N.J.W. (Father), appeals from an order of the Court of Common Pleas for the 26th Judicial District, Montour County Branch (trial court) that reduced his obligation to pay child support to T.M.W. (Mother) from $2,201.62 per month to $1,558.60 per month.  For the reasons set forth below, we affirm.

Mother and Father were married on November 5, 2005, separated in December 2009, and divorced in April of 2011.  They have one child, a daughter who was born in November 2006 (Child).  Father was at the time of the divorce, and still is, a physician at Geisinger Medical Center.  Mother is a nuclear medicine technologist.  As part of the parties' marital settlement agreement, Father agreed to pay Mother $2,800 per month in child support,

_____

[*] Retired Senior Judge assigned to the Superior Court.

subject to increase or decrease based on a substantial change in circumstances. At that time, Father and Mother shared equal custody of Child.

In 2018, the child support was reduced to $2,201.62 per month. In March 2018, Father filed a petition to modify custody. On September 14, 2018, the trial court issued an order, pursuant to a stipulation of the parties, modifying custody to give Father custody of Child 18 of every 28 days during the school year and every other week during the summer, and give Mother custody of Child 10 of every 28 days during the school year and every other week during the summer. Trial Court Custody Order, 9/14/18.

On October 3, 2018, Father filed the instant petition to modify child support, asserting that child support should be terminated because he had primary physical custody of Child. On February 21, 2019, the Special Master held a hearing on the petition at which Father, Mother, Mother's boyfriend (J.W.), whom she married after the hearing in this matter, and a vocational expert witness testified.

Father testified that his salary as a radiologist at Geisinger is $530,000 per year, but that in 2018 his income was approximately $130,000 higher because additional radiology work was available that will no longer be available after 2018. N.T. at 65-66, 68-69. Father testified that he pays Child's private school tuition and pays for Child's extra-curricular activities. *Id.* at 72-73. Father testified that he pays Child's health insurance and paid

for Child's braces.  *Id.*  Father's last 2018 pay stub was admitted in evidence at the hearing and showed that his 2018 gross income was $678,900.90.

Mother testified that she lost her fulltime nuclear medicine technologist job in 2015, when her employer closed the department where she worked, and only had part-time work and lower-paying jobs in the period from 2015 through 2018.  N.T. at 15-17, 26-27, 29, 82-84.  Mother testified that she applied for but was unable to obtain full-time employment as a nuclear medicine technologist within a 1 to $1^{1}/_{2}$ hour radius of Danville, where she and Father both live, until January 2019, when she was hired by Geisinger full-time.  *Id.* at 16, 25-26, 33-34, 82-83, 92-95.  At her new full-time nuclear medicine technologist position, Mother is paid $32.81 per hour and works a 40-hour week.  *Id.* at 16; Court Ex. 2 Employment Verification Questionnaire. Mother testified that the mortgage payment for her house is $1,850 per month (including taxes) and that the house was bought when the parties separated because Father agreed to pay the down payment and provide child support so that Child would have a good home with Mother near where Father lives.  N.T. at 8-9, 36-37, 84-85.  Mother also testified that she could not afford to live there without child support from Father.  *Id.* at 84-85.  Mother lives in the house, which is in her name alone, with J.W. and their seven-year old daughter, and Child when Mother has custody.  *Id.* at 8-11.  Mother testified that she has approximately $40,000 in credit card debt from the period when she did not have a full-time job.  *Id.* at 24-25.  Mother testified that Father

pays Child's private school tuition because he is the one who wants her to attend private school and that she does not pay for Child's extra-curricular activities. *Id.* at 19-20, 85. Mother testified that Father pays Child's health insurance and all co-pays and paid for Child's braces. *Id.* at 30-31.

The vocational expert testified that Mother's earning capacity as a nuclear medicine technologist in central Pennsylvania is $85,285 per year, but admitted that he did no labor market survey and made no determination whether there were job openings in that field in central Pennsylvania in 2015 to 2018. N.T. at 54-55, 60-61. Mother and J.W. testified that J.W. pays utilities for the house, repairs, and some of the household's food expense, and provides Mother's and their daughter's health insurance. *Id.* at 10-12, 18, 43. J.W.'s gross income in 2018 was approximately $42,000.

The Special Master issued a report and a recommended support order requiring that Father pay $1,558.60 per month child support to Mother, effective February 1, 2019. The Special Master found that based on the parties' income and expenses, Father's child support obligation under the child support guidelines would be $1,948.25 per month, but recommended a 20% downward deviation to $1,558.60 based on the additional household income from J.W. Special Master's Report at 3. The Special Master's recommended support order further provided that the requirement that Father provide Child's health insurance continue in effect and that with respect to

unreimbursed medical expenses, expense beyond $250 annually be paid 89% by Father and 11% by Mother.

Father filed exceptions to the Special Master's report and recommended support order. On May 6, 2019, the trial court issued an order, entered May 7, 2019, denying Father's exceptions and directing the parties to comply with the terms of the Special Master's recommended order. This timely appeal followed.

Father presents four issues for our review: 1) whether the trial court was required to terminate Father's child support obligation and award him child support; 2) whether the trial court erred in failing make its order effective as of the date that Father filed his petition; 3) whether the trial court erred in failing to allocate any of Child's private school tuition to Mother; and 4) whether the trial court erred in using Father's total 2018 income as his gross income. Appellant's Brief at 8-9.[1]

Our review of the trial court's order is limited to determining whether the trial court abused its discretion and whether there is insufficient evidence to support the order. *Kimock v. Jones*, 47 A.3d 850, 853-54 (Pa. Super. 2012); *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007).

> When evaluating a [child] support order, this Court may only reverse the trial court's determination where the order cannot be

_____

[1] Although Father states these as eight issues, the first four issues and the eighth issue are more properly analyzed as arguments with respect to the single issue listed as Issue 1 above.

sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Bulgarelli**, 934 A.2d at 111 (quoting **Arbet v. Arbet**, 863 A.2d 34 (Pa. Super. 2004)).

Father does not contend that he is entitled to termination of his child support obligations based on calculations under the child support guidelines, Pa.R.C.P. 1910.16-1–1910.16-7.[2]  Rather, he argues that termination of child support and an award of child support to him are required under **Colonna v. Colonna**, 855 A.2d 648 (Pa. 2004) and **Saunders v. Saunders**, 908 A.2d 356 (Pa. Super. 2006) because he has primary custody of Child.  These arguments are without merit.

**Colonna** and **Saunders** both address the award of child support to a parent who has custody of the child less than half the time.  In **Colonna**, the Pennsylvania Supreme Court held that a parent with primary custody may be

---

[2] High-income child support cases, such as this, are governed by Pa.R.C.P. 1910.16-3.1.  **Hanrahan v. Bakker**, 186 A.3d 958, 972 (Pa. 2018).  Father has not asserted that the trial court failed to properly apply Rule 1910.16-3.1. The only claims of error that Father raises with respect to application of any of the guidelines are his arguments discussed below concerning Pa.R.C.P. 1910.16-5(b) and concerning private school tuition under Pa.R.C.P. 1910.16-6.

ordered to pay child support to a parent with partial custody where the parent with primary custody has a far greater income than the parent with partial custody. 855 A.2d at 652. The Court held in such cases of great disparity in income where the primary custodial parent has the higher income,

> the trial court should inquire whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody. We specifically note that the term "appropriate" does not mean equal to the environment the children enjoy while in the custodial parent's care, nor does it mean "merely adequate." The determination of appropriateness is left to the discretion of the trial court, upon consideration of all relevant circumstances.

*Id.*

In **Saunders**, this Court upheld the denial of child support to a non-custodial parent even though the custodial parent's income was over four times the non-custodial parent's income and the non-custodial parent had substantial debt. The Court held that the trial court did not abuse its discretion in denying child support because the non-custodial parent's financial problems were due to his choice to do volunteer work for over $3\frac{1}{2}$ years, rather than seeking paying employment, and because awarding child support to the non-custodial parent would not necessarily benefit the children, given his intent to use it to finance improvements on a home in which he had no ownership interest and from which he could be evicted. 908 A.2d at 359-62.

Father asserts that Mother is not entitled to child support under **Colonna** and **Saunders** because she is able to provide appropriate housing and amenities for Child. While the evidence showed that Mother is providing

- 7 -

appropriate housing and amenities during her periods of partial custody, Mother, at all times has been receiving over $2,000 per month in child support, well in excess of the $1,558.60 per month ordered by the trial court. The fact that appropriate housing and amenities have been provided therefore does not show that Mother is able to do so without the child support ordered by the trial court.

The evidence supports the trial court's conclusion that without child support from Father, Mother lacks sufficient assets to provide Child with appropriate housing and amenities during her periods of partial custody. Mother testified that she could not afford the housing that she is providing without child support. In addition, Father's agreement in the divorce to pay $2,800 per month in child support shows that he and Mother contemplated that substantial child support was necessary for Mother to appropriately provide for Child in her periods of partial custody even when she was fully employed. Father agreed to pay that $2,800 per month when the parties had equal shared custody, subject to modification only based on a substantial change in circumstances. Father's and Mother's occupations have not changed and there was no evidence that Father's income has declined or that Mother's income was higher in 2018 and 2019 than at the time of the agreement.

Rather, the only two changes in circumstances that could reduce or eliminate Father's stipulated child support obligation are the reduction in

Mother's custody from 50% to approximately 36% and the fact there is another adult earning $42,000 per year in Mother's household. The only other changes were Mother's period of underemployment and her consequent credit card debt, which would increase, not decrease or eliminate, her need for child support. Reducing the stipulated child support proportionately to the reduction in custody would result in a monthly child support amount of $2,016, higher than both the amount that the court ordered and the Special Master's guideline calculation before the deviation reduction, even without considering that fixed expenses (such as Mother's mortgage payments) are not reduced by the reduction in the percentage of custody and without considering Mother's 2015-2018 loss of income and resulting credit card debt. With respect to the other income from J.W., that extra income (which must also support another child) was taken into account as a deviation from the guidelines that reduced Father's child support obligation by 20%.

Father argues that **Saunders** compels the termination of child support here because Mother's underemployment and any consequent debt were allegedly her fault. This contention was rejected by the trial court based on Mother's testimony concerning her employment search efforts. The trial court held that Mother's geographical limitation of her job search was reasonable because a move would interfere with her ability to parent Child with Father. Trial Court Opinion at 4. There was no evidence contradicting Mother's testimony that she applied for all nuclear medicine technologist job openings

within commuting distance. Father's vocational expert only testified to the income that could be earned in a full-time job in that field, not that any job openings existed during Mother's period of underemployment. This case is therefore unlike **Saunders**, where the non-custodial parent chose to do unpaid volunteer work rather than seeking paid employment.

Father also argues that **Saunders** compels the termination of child support here because no child support was awarded in that case, despite the fact that the living conditions at the non-custodial parent's residence were less ideal than Mother is providing here. Contrary to Father's contention, however, this Court did not hold in **Saunders** that that the non-custodial parent's living conditions there were *per se* appropriate or that anything better than those conditions cannot permit a child support award to a non-custodial parent. Rather, the Court held that the trial court did not abuse "its very broad discretion" in denying child support to the non-custodial parent because the non-custodial parent had voluntarily "squandered many of his assets and opportunities to provide more for his children" and it was not clear that child support would be expended in a way that benefited the children. 908 A.2d at 362. In addition, the non-custodial parent in **Saunders** had not been previously entitled to child support. **Id.** at 358. Here, in contrast, Mother was entitled to $2,800 under the parties' child support agreement even when fully employed and without any showing of significant credit card debt.

Father further asserts that under **Colonna** the trial court was required to consider the guideline deviation factors in Pa.R.C.P. 1910.16-5(b) and that he is entitled to termination of child support or an award of child support in his favor if the deviation factors are considered.[3] Neither of these contentions provides any ground for reversal of the trial court's decision here.

To the extent that Father is arguing that the trial court failed to consider the Pa.R.C.P. 1910.16-5(b) deviation factors or address them in its opinion, that argument is waived. An appellant's failure to include an issue in his Pa.R.C.P. 1925(b) concise statement of the errors complained of on appeal waives that issue for purposes of appellate review. **Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa. Super. 2006); **McKeeman v. Corestates Bank, N.A.**, 751 A.2d 655, 658 (Pa. Super. 2000). The only issue set forth by Father in his Rule 1925(b) statement concerning Pa.R.C.P. 1910.16-5(b) was the

_____

[3] This section of the child support guidelines provides:
> In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
> (1) unusual needs and unusual fixed obligations;
> (2) other support obligations of the parties;
> (3) other income in the household;
> (4) ages of the children;
> (5) the relative assets and liabilities of the parties;
> (6) medical expenses not covered by insurance;
> (7) standard of living of the parties and their children;
> (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
> (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b).

contention that "the deviation factors under Pa.R.C.P. 1910.16-5 establish that Father, not Mother, should receive a deviation, thus, meaning that Mother did not meet her burden of establishing that she does not have sufficient assets to provide appropriate housing and amenities for the minor child during her period of partial physical custody." Statement of Errors Complained of on Appeal ¶3. This raises only the issue of whether the deviation factors require termination of child support, not a claim that the trial court erred in failing to consider or address the deviation factors.

Father's contention that the deviation factors require termination of child support fails on the merits. Father does not point to any of the deviation factors that would support any reduction of his child support obligation other than the factor of "other income in the household" found by the Special Master and trial court. This factor does not require a conclusion that Mother is able to provide appropriate housing and amenities during her periods of custody without the child support ordered by the court. The additional income in Mother's household is approximately $42,000 and is subject to an additional support obligation for Mother's and J.W.'s child. Even if that income were included in its entirety with Mother's income ($68,244.80), the combined income of Mother's household would be $110,244.80, which is only approximately $1/6$ of Father's income. ***Colonna*** requires consideration of the deviation factors, but does not hold that the presence of a single factor

supporting a downward deviation precludes a child support award to a lower income parent with partial custody.

Father's remaining arguments assert that the trial court committed three specific alleged errors with respect to the effective date of its order and the amount of child support: 1) that the effective date of the order was incorrect; 2) that the trial court did not allocate any of Child's private school tuition to Mother; and 3) that use of Father's total 2018 income as his gross income in the computation of child support was error.  These challenges similarly fail.

Father argues Pa.R.C.P. 1910.17 required the trial court to make its reduction in child support effective as of the date that he filed his petition, October 3, 2018.  Rule 1910.17, however, does not impose such an absolute requirement.  Rather, it provides that "[a]n order of support shall be effective from the date of the filing of the complaint or petition for modification **unless the order specifies otherwise**."  Pa.R.C.P. 1910.17(a) (emphasis added). Here, the order specified that its effective date was February 1, 2019.  That effective date was selected because the modified child support award was based on Mother's new full-time employment that she did not have at the time the petition was filed.  Special Master's Report at 3.  Specifying an effective date based on the date that the basis for the reduction in support occurred does not constitute an abuse of the trial court's broad discretion.

Father argues that Pa.R.C.P. 1910.16-6(d)(1) requires that private school tuition be allocated between the parents proportionately to their incomes.[4] The trial court did not allocate Child's private school tuition because it concluded that Father was the one who wanted Child to attend the private school and that the tuition expense was *de minimis* in comparison to Father's income. Trial Court Opinion at 2-3. The conclusion that Father's preference was the reason that Child was attending private school was supported by Mother's testimony at the hearing. N.T. at 19, 85. Moreover, this issue was

---

[4] Pa.R.C.P. 1910.16-6, governing allocation of expense, provides in relevant part:

> The trier-of-fact may allocate between the parties the additional expenses in subdivisions (a)-(e). …
>
>          *          *          *
>
> (d) Private School Tuition. Summer Camp. Other Needs. Expenditures for needs outside the scope of typical child-rearing expenses, e.g., private school tuition, summer camps, have not been factored into the Basic Child Support Schedule.
> (1) If a party incurs an expense for a need not factored into the Basic Child Support Schedule and the trier-of-fact determines the need and expense are reasonable, the trier-of-fact shall allocate the expense. The trier-of-fact may order that the obligor's expense share is added to his or her basic support obligation, paid directly to the service provider, or paid directly to the obligee.
> (2) Documentation of the expenses allocated under (d)(1) shall be provided to the other party not later than March 31 of the year following the calendar year in which the invoice was received unless the service provider invoices the parties separately for their proportionate share of the expense. For purposes of subsequent enforcement, these expenses need not be submitted to the domestic relations section prior to March 31. Allocation of expenses for which documentation is not timely provided to the other party shall be within the discretion of the court.

***Id.***

previously litigated by Father and was resolved against him. Father filed exceptions to the Special Master's earlier August 23, 2018 recommended support order in which he alleged that the Special Master "erred in not allocating [Child]'s private school tuition." Exceptions to 8/23/18 Special Master Order ¶17. On December 26, 2018, the trial court denied Father's exceptions to that support order in their entirety and Father did not appeal that ruling. Father did not introduce any evidence at the hearing on the instant petition that circumstances concerning Child's private school tuition had changed subsequent to this prior unappealed determination. Father is therefore barred from re-litigating the issue of allocation of private school tuition here. **Llaurado v. Garcia-Zapata**, ___ A.3d ___, ___, 2019 PA Super 338, *7-*8 (No. 180 EDA 2019, filed November 13, 2019).

Father does not dispute that the $678,990.90 amount used in calculating his net income and child support obligation was his 2018 income. Rather, he contends that a lower figure of approximately $600,000 should have been used as his gross income because he testified that some of his 2018 earnings were for additional work that would not be available in 2019. Appellant's Brief at 58-59; N.T. at 68-69. This does not show any error by the trial court. It is not an abuse of discretion for the trial court to base child support calculations on the most recent year's actual income, even if there is testimony that some of that income will be non-recurring items and that future earnings will likely be lower. **Bulgarelli**, 934 A.2d at 115. If a substantial

- 15 -

decrease in Father's income in fact occurred after 2018, Father's remedy is to seek a modification based on that decrease in income. *Id.*

Because the trial court did not abuse its discretion or commit any error of law in holding that Father is obligated to pay Mother child support of $1,558.60 per month and its order is supported by sufficient evidence, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/31/2020