J-A28003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CLAUDIA BAUMERT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW BAUMERT | : | |
| | : | |
| Appellant | : | No. 622 EDA 2024 |

Appeal from the Order Entered January 29, 2024
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): PACSES: 105114283

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JANUARY 28, 2025**

Appellant, Matthew Baumert ("Father"), appeals pro se from the January 29, 2024, order dismissing his exceptions to the support order. He claims that the trial court's support order violates the constitution and miscalculated Claudia Baumert's ("Mother") income. We affirm on the basis of the well-reasoned trial court opinion.

The trial court thoroughly stated the history of the proceedings before the hearing officer, the trial court, and this Court. *See* Trial Court Opinion, 6/14/24, at 1-13. We highlight some notable facts.

On August 5, 2020, Mother filed a complaint for support seeking Alimony Pendente Lite and child support for the parties two minor children. In the initial proceedings before the hearing officer, Father filed a motion to dismiss for Mother's failure to comply with the discovery order. This motion was denied. On March 11, 2021, the hearing officer issued a recommended order on

Mother's complaint. However, on July 14, 2021, the trial court granted Father's support exceptions and remanded the matter to the hearing officer to revise Mother's earning capacity and reconsider treatment of Father's bonus.

Before the hearing officer, Father again filed a motion to dismiss for Mother's failure to comply with the discovery order, which was denied. Also, at some point in these proceedings before the hearing officer Father began to assert that he should not have to provide child support since the parties share custody. On January 25, 2022, after a support hearing, the hearing officer issued a recommended order dismissing Father's motion to dismiss and recommended that Father's monthly support payment be $226.00 per month, effective January 1, 2022. The support calculation was based on an assessment of Mother's earning capacity as $60,000 and Father's gross income for 2021 being $142,581.

Father filed exceptions to the hearing officer's recommendation. On May 11, 2022, the trial court denied Father's exceptions. Father appealed the trial court's May 11, 2022, order to this Court at Docket No. 1543 EDA 2022. However, after the trial court issued its twenty-six-page 1925(a) opinion, Father withdrew his appeal.

The instant appeal stems from Mother filing a modification petition on August 8, 2022. The purpose of the modification petition was to adjust the mortgage credit that Father received for paying the mortgage because Mother was prepared to move out of the residence, and Father was moving back into

the residence. On September 11, 2023, the hearing officer issued her recommendation to remove Father's mortgage credit and relieve him of paying alimony. This increased Father's monthly support obligation to $1,019.00 per month. Father filed exceptions that were nearly identical to his previous exceptions.

On January 29, 2024, the trial court dismissed Father's exceptions. Father timely appealed and filed a court-ordered statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). The trial court filed an opinion pursuant to Rule 1925(a).

Father raises the following issues on appeal.

1. WHETHER THE LOWER COURT ERRED IN UPHOLDING THE DRO SUPPORT ORDER WHERE APPELLANT/FATHER IS A CUSTODIAL PARENT WHICH IS IN OPPOSITION TO FEDERAL LAW, NAMELY, THE CHILD SUPPORT ENFORCEMENT ACT, THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION AND THE EQUAL PROTECTION PROVISION IN THE UNITED STATES CONSTITUTION.

2. WHETHER THE LOWER COURT, IN DISMISSING APPELLANT/FATHER'S MOTION TO DISMISS VIOLATED APPELLANT'S DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION WHERE APPELLEE/MOTHER CONTINUOUSLY FAILED TO ABIDE BY DISCOVERY REQUESTS AND COURT ORDERS REQUIRING HER TO PROVIDE INCOME INFORMATION TO APPELLANT.

3. WHETHER THE LOWER COURT ERRED IN UPHOLDING THE SUPPORT ORDER WHICH ASSESSED APPELLEE/MOTHER WITH A DEFICIENT EARNING CAPACITY OF $60,000 PER YEAR WHERE SUCH EARNING CAPACITY WAS LESS THAN HER ACTUAL EARNINGS FROM MORE THAN 15 YEARS AGO, WHERE APPELLEE/MOTHER ACKNOWLEDGED THAT SHE WAS QUALIFIED FOR MANAGEMENT LEVEL POSITIONS AND WHERE SHE

- 3 -

TESTIFIED THAT SHE CHARGED BE[]TWEEN $95 AND $130 PER HOUR AS A PRIVATE CONSULTANT.

Appellant's Brief, at 7 (numbering provided; suggested answers omitted).[1]

"Our review of the trial court's order is limited to determining whether the trial court abused its discretion and whether there is insufficient evidence to support the order." **T.M.W. v. N.J.W.**, 227 A.3d 940, 944 (Pa. Super. 2020) (citations omitted).

> When evaluating a child support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Id.** (brackets omitted; citation omitted).

After reviewing the record, Father's brief, and the Honorable Daniel J. Clifford's comprehensive and well-reasoned Pa.R.A.P. 1925(a) opinion, we conclude that Father's issues merit no relief. The trial court correctly analyzed each issue raised by Father, and thus, we adopt the trial court's analysis. **See** Trial Court Opinion, 6/14/24, at 24-31 (refuting Father's argument that child support may only be imposed on a non-custodial parent); **see id.** at 20-21

_____

[1] In his appellate brief Appellant narrows his arguments to these three issues. We note that in his concise statement he purported to raise sixteen issues for our review. **See** Trial Court Opinion, 6/14/24, at 14-16.

- 4 -

(concluding that the hearing officer did not err in denying Father's motion to dismiss because Mother provided the necessary financial records to calculate her earning capacity); *see id.* at 21-24 (recounting the evidence that supported the hearing officer's finding that Mother's yearly earning capacity was $60,000; crediting Mother's testimony regarding her current job; and rejecting Father's attempt to establish Mother's yearly earning capacity to be between $112,500 and $153,000 where Mother never earned that amount).

Accordingly, we affirm based on the trial court's opinion.[2]

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2025

_____

[2] The trial court requests that we remand the matter for the trial court to impose attorney's fees. *See* Trial Court Opinion, 6/14/24, at 37-39. The position of the trial court is very understandable; however, we decline to do so, particularly because Mother did not file an appellate brief in which she requested attorney's fees.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| **CLAUDIA BAUMERT** | : | **NO. 2019-23994** |
| **Plaintiff** | : | |
| | : | **PACSES NO. 105114283** |
| **v.** | : | |
| | : | **622 EDA 2024** |
| **MATTHEW BAUMERT** | : | |
| **Defendant** | : | |

## OPINION

Clifford, Daniel J.                                                                      June 13, 2024

Appellant, Matthew Baumert, files this appeal from the Order entered by the undersigned

in this child support matter dated January 29, 2024.

## FACTUAL AND PROCEDURAL HISTORY

Appellant is Matthew Baumert ("Father") and Appellee is Claudia Baumert ("Mother").

The parties have two minor children: Zachary Baumert (born August 2, 2009) and Anna Baumert

(born March 15, 2017). The parties were married on August 25, 2007 and separated on or about

July 30, 2017.

Mother filed her Complaint for Support on August 5, 2020. Her complaint sought support

for herself, in the form of *Alimony Pendente Lite* ("APL"), and child support for the parties' two

minor children.

A non-record proceeding, before a Domestic Relations Conference Officer, was

conducted on August 26, 2020.

Thereafter, an initial conference before the Support Hearing Officer, Patricia Coacher,

Esquire (hereinafter "Officer") took place on November 23, 2020. Following this Conference, an

Order was issued designating the case as "complex" and requiring the parties to submit discovery

within 60 days of the Order. Pursuant to Montgomery County procedure, any dispute relating to the submission of any discovery required the parties to each file Briefs with the undersigned.

The parties were then scheduled for a record hearing before the Officer on March 8, 2021 pursuant to Pa.R.C.P. No. 1910.10, *"Alternate Hearing Procedure"*. [1]

Prior to the Officer's Hearing, an Order was issued on February 26, 2021 directing Mother to answer all outstanding Discovery within seven days. [2]

On March 7, 2021, one day prior to the record hearing, Father filed a Motion to Dismiss the Complaint in Support based on his allegation that Mother did not fully comply with the December 3, 2020 and February 26, 2021 Discovery Orders entered by the Officer.

At the March 8, 2021 record hearing, the Officer addressed Father's Motion to Dismiss, and chose not to dismiss the matter, stating:

> *HEARING OFFICER: I think Mother has produced what Mother*
> *has to produce and like I said when we started our conferencing,*

---

[1] The child support proceedings were subject to Pennsylvania Rule of Civil Procedure 1910.12. *Office Conference. Hearing. Record. Exceptions. Order.*, as observed by the Montgomery County Court of Common Pleas, which provides the following:

> *"(d) The hearing officer shall receive evidence, hear argument, and not later than 20 days after the close of the record, file with the court a report containing a recommendation with respect to the entry of an order of support...*
>
> *(e) The court, without hearing the parties, shall enter an interim order consistent with the proposed order of the hearing officer. Each party shall be provided, either in person at the time of the hearing or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of mailing of the order, whichever occurs first, file with the domestic relations section written exceptions to the report of the hearing officer and interim order.*
>
> *...*
>
> *(h) If exceptions are filed, the interim order shall continue in effect. The court shall hear argument on the exceptions and enter an appropriate final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the filing of exceptions to the interim order..."*

[2] *See* February 26, 2021 Order.

> *and when we started this hearing, I believe this case boils down to what is Mother's earning capacity.*

*See:* March 8, 2021, Notes of Testimony at p. 10.

Notably, the record reflects that Mother did produce 2017, 2018, and 2019 tax returns, as well as a Schedule "C" for 2020.[3]

At the Hearing, Mother testified that she is a registered/licensed dietician and that her highest W-2 earnings were $67,601 in 2013 (seven years prior to the filing of her support Complaint).

The Officer determined Father's gross income to be $158,894.75 per year, according to Father's 2020 W-2. Father's bonus earned in 2019, which was included in his 2020 W-2, was considered when determining Father's gross income. Testimony regarding Father's yearly bonus was included in the record.[4] The Officer stated as follows:

> *HEARING OFFICER: Mr. Baumert, I know that's one of your concerns in this case, um, because of the, the nature of 2020 and the pandemic and I did take a look at some documentation that was provided from your employer. It was probably a rough year, so you may or may not be getting that bonus. And I understand that your 2020 income includes the bonus that you received from 2019. So, if that happens, then your solution if it's a significant difference is you file a Petition to Modify.*

*See:* March 8, 2021, Notes of Testimony at P.9.

---

[3] *See* March 11, 2021 Order.

[4] *See* March 8, 2021 Notes of Testimony at p. 9.

-3-

Following the complex record hearing on March 8, 2021, a Recommended Order was issued by the Officer on March 11, 2021 requiring Father to pay support in the amount of $162.10 per month retroactive to August 5, 2020, the filing date of Mother's Petition.[5]

In her findings, the Officer indicated that the Recommended Order consisted of the following:

| | |
|---|---|
| $1,471.70 per month for 2 children | |
| $141.15 per month for medical insurance provided by Father | less |
| $511.28 per month for child care paid by Father | less |
| $468.70 per month shared custody adjustment | less |
| $1,238.48 per month APL | |
| $1,263.95 per month mortgage paid by Father | less |
| $163.00 per month cable/internet paid by Father | less |

**$162.10 per month TOTAL**

On March 31, 2021, Father filed Exceptions to the Recommendation alleging the Officer erred as follows: [6]

1. Denying Father's Motion to Dismiss and not requiring Mother to provide documents requested in Discovery;

2. Using Father's gross income from 2020 and taking Father's 2019 bonus into consideration when determining Father's net monthly income; and

3. Assessing Mother's earning capacity at $60,000.

Both parties filed timely Briefs.

Oral argument was then scheduled before the undersigned on July 14, 2021.

Pennsylvania case law has made clear that the court shall hear argument on the exceptions and issue an Order based on the evidence provided at the record hearing before the

---

[5] *See* March 11, 2021 Order.

[6] *See* March 31, 2021 Exceptions to Recommendations of the Hearing Officer in Support.

-4-

Support Hearing Officer (hereinafter "Officer"). It shall not conduct a *de novo* hearing such that the matter is re-tried.[7]

Upon review of the record, as well as the presented argument on June 21, 2021, the Court entered an Order on July 14, 2021 granting Father's Support Exceptions and remanding the matter to the Officer to make appropriate revisions to Mother's earning capacity and reconsider treatment of Father's bonus. Father was directed to provide any updated bonus information to the Officer.[8]

On September 23, 2021, Father then filed a Motion to Dismiss claiming that Mother had failed to fully comply with the Discovery Orders entered on February 26, 2021 and July 14, 2021.[9] Father also believed he should not have to provide support since the parties have "shared custody". A Conference was held on September 23, 2021 with the Officer and Mother responded that she had substantially complied with all Discovery requests.[10]

Following the Conference, an Agreed Order was entered on September 23, 2021 which denied Father's Motion to Dismiss, suspended Father's $162.10 per month payment, and continued the case to December 23, 2021 for a full-day hearing.[11] It was anticipated that Father

---

[7] *See: Everhardt v. Akerly*, 665 A.2d 1283, 1286 (Pa. Super. 1995) (holding that Pa. R.C.P. 1910.12(g) requires that the court hear argument on exceptions); *See also: Sirio v. Sirio*, 951 A.2d 1118, 1196 (Pa. Super. 2008) (reasoning that the trial courts scope of review is limited to evidence received by the Hearing Officer).

[8] *See* July 14, 2021 Order.

[9] *See* September 23, 2021 Agreed Order.

[10] *Id.*

[11] *Id.*

would engage a vocational expert for the Hearing in order to evaluate Mother's income and earning capacity.[12]

At the scheduled hearing on December 23, 2021, Father informed the Court he was unable to have a vocational expert assess Mother's earning capacity because Father's expert allegedly indicated they needed more information from Mother.[13]

Father filed an additional Motion to Dismiss Complaint for Support on January 3, 2022, alleging the parties "share custody" and he is providing support.[14]

A Support hearing was held on January 13, 2022 before Hearing Officer Jennifer Hekking, Esquire. Father provided additional oral argument at the start of this hearing regarding his Motion to Dismiss Complaint for Support. Father specifically alleged that the Support Complaint against him is contrary to federal law, which only awards support to "somebody who's basically, who's been absent."[15]

Following the hearing, a Recommended Order was issued on January 25, 2022 by the Officer which dismissed Father's Motion to Dismiss and recommended Father's monthly support begin at $63.00 per month effective September 23, 2021.[16] Then, effective January 1, 2022, following the effective date of revised Support Guidelines, the Officer recommended Father's monthly support payment be $226.00 per month.[17]

---

[12] *Id.*

[13] Notably, there was no letter provided from Husband's proposed vocational expert to verify what additional information was needed.

[14] *See* January 3, 2022 Motion to Dismiss Complaint in Support.

[15] *See* January 13, 2022 Notes of Testimony at p.3.

[16] *See* January 25, 2022 Recommended Order.

[17] *Id.*

In her findings, the Officer indicated that the Recommended Order (effective January 1, 2022) consisted of the following:

| | |
|---|---|
| $1,626.00 per month for 2 children | |
| $110.00 per month for medical insurance provided by Father | less |
| $532.00 per month shared custody adjustment | less |
| $530.00 per month for tuition paid by Father | less |
| $1,151.00 per month mortgage paid by Father | less |
| $923.00 per month APL | |

**$226 per month TOTAL**

The Recommended Order indicated that, even in a shared custody arrangement, the higher wage earner may be required to pay child support and APL absent findings of equal incomes pursuant to Pa.R.C.P. No. 1910.16 – 4(c).[18] The Officer stated in her Recommendation that Father did not provide sufficient testimony, or introduction of exhibits, to prove his earnings are equal to Mother's earning capacity.[19]

Mother's counsel argued that, as part of the agreed discovery, Father had already received four years of business tax returns, five years of client invoices, years of business expenses, five years of Wife's income, yearly transactions, profit and loss statements, and that Mother had signed authorizations for Father to obtain this information right away.[20]

The Officer assessed Mother's earning capacity to remain at $60,000 and Father's gross income to be $142,581 for 2021 (which actually represented a $16,000 reduction from the prior income of $158,894).[21]

---

[18] *See* January 25, 2022 Recommended Order.

[19] *Id.*

[20] *See* January 13, 2022 Notes of Testimony at p. 6.

[21] *See* January 25, 2022 Recommended Order.

On February 14, 2022, Father once again proceeded to file Exceptions to the Recommendation of the Officer, for both the first Order entered on March 11, 2021 *and* the second Order entered on January 25, 2022. Father's twelve (12) Exceptions were primarily directed to the Officer's denial of Father's Motion to Dismiss, the constitutional validity of Pennsylvania Support Rules, Father's income findings and Mother's earning capacity. Father also specifically and repeatedly alleged Mother's Support Complaint should have been dismissed for failure to comply with various discovery Orders.[22]

Both parties' Briefs on Father's Exceptions were timely filed.

The matter was scheduled for oral argument before the undersigned on May 9, 2022. Father again argued he was still in need of underlying financial records from Mother's now defunct business in order to provide them to a vocational expert.[23] Mother had testified at the record hearing that she had complied with all requests for business documents, to the extent the information was available.[24]

The undersigned issued an Order on May 11, 2022 denying Father's Exceptions. The undersigned found no errors in the Officer's assessment of Mother's earning capacity and that the Officer correctly considered Mother's age, education, prior earnings and credible testimony for job searches.[25] Further, the undersigned found Father's constitutional claims on the validity of the Pennsylvania Support Guidelines to hold no merit, as he fails to accept Pennsylvania law which requires the *"duty to support one's child is absolute, and the purpose of the child support*

---

[22] *See* February 14, 2022 Exceptions to Recommended Order.

[23] *See* May 11, 2022 Order.

[24] *Id.*

[25] *See* May 11, 2022 Order.

-8-

*is to promote the child's best interest*".[26] The undersigned concluded that Father's belief, that he should not be obligated to pay any child support solely based on the fact that he has shared custody, was also without merit.[27]

Following the issuance of the May 11, 2022 Order denying Father's Exceptions, Father filed an appeal to Superior Court of Pennsylvania. [28] Of the eleven issues filed in Father's Concise Statement of errors, the second, third, fourth, seventh, and eighth all related to the custodial status of Father (which, in this now second appeal, have shown to be Father's appellate issues once again). [29] This is mirrored in the fact that Father also raises, in this second appeal, the same misguided references to federal statutes for child support enforcement *and* constitutional issues that he raised in his first appeal in 2022. This is shown in four of Father's now sixteen errors complained of where one, four, six, and fourteen all reference the same constitutional issues as Father's 2022 appeal and his second, fifth, seventh, eighth and ninth all relate to Father's repeated misguided references to federal law.

The undersigned issued a twenty six page Opinion on October 27, 2022.

Thereafter, the parties were officially divorced via a decree issued on December 14, 2022.

Subsequently, after the issuance of the divorce Decree, Father withdrew his appeal (which was granted by the Superior Court on March 17, 2023).

---

[26] *Id.*

[27] *Id.*

[28] *See* 1543 EDA 2022.

[29] *Id.*

The current round of support litigation relates to Mother's filing of a Petition to Modify on August 8, 2022 barely three months after the undersigned's May 11, 2022 Order (which at that time was subject to Father's first appeal to Superior Court).

Pa.R.C.P. No. 1910.19 (a), "*Modification*", provides as follows:

> *A petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based. A new guideline amount resulting from new or revised support guidelines may constitute a material and substantial change in circumstances. The existence of additional income, income sources or assets identified through automated methods or otherwise may also constitute a material and substantial change in circumstances.*

The basis for Mother's Petition to Modify was the necessity to make an adjustment to the mortgage credit that Father was provided ,on account of his payment of the mortgage on Mother's behalf, in the May 11, 2022 Order.[30] This minor adjustment to the May 11, 2022 Order was required since Mother moved out of the residence on September 1, 2022 and Father was moving back in. [31]

Following yet another Hearing in front of the Support Hearing Officer on August 30, 2023, the Officer issued her Recommendation on September 11, 2023. This Recommendation removed Father's mortgage credit and, effective January 1, 2024, relieved Father of the payment of alimony (per their divorce agreement) as follows:

$2,029.00 per month for 2 children;
$575.00 per month shared custody adjustment;                     less
$30.00 per month health insurance provided by Father;            less
$405.00 per month for tuition paid by Father                     less

**$1,019.00 per month TOTAL**

---

[30] *See* August 30, 2023 Notes of Testimony at p. 4.

[31] *Id.*

Following the issuance of the Officer's Order, Father once again filed lengthy Exceptions on October 2, 2023. [32]

Father's third set of Exceptions were best summarized as follows: (i) Father filed exceptions stating that the hearing officer erred by not acknowledging his continuance request. Father had gotten rid of his counsel and needed time to prepare for the hearing. (ii) Father states that the Officer also did not accept his brief that he filed on August 30, 2023. (iii) Father states that the Officer did not have jurisdiction. (iv) Father states that the Officer erred in accepting Mother's change in circumstance. (v) The Officer did not account for the DRO order to change the child support on January 20, 2023 which removed the mortgage without a proceeding. (vi) Father raises constitutional issues related to the 14th Amendment and due process, saying that it was not upheld. He also claims a violation of the Equal Protection Clause. (vii) The Officer erred by failing to correct Father's move. (viii) Father states that it was also in error that the Officer relied on Mother to be able to sign the children up for SSA Title 4 D Child Support unilaterally. It was in error that this was used to establish and enforce orders against Father. Father cites numerous issues with the Social Security Act saying that they are only appropriate when there is a custodial and non-custodial parent, and that they are based on the custody arrangement. Father further states that all orders in this case are under this act and essentially all orders would then be invalid under federal law. (ix) Father states that the Officer does not abide by federal law, and that it should be abided by because it preempts state law. In turn, custodial parents cannot have child support mandates. (x) The Officer erred in that the Officer failed to abide by the PA Dept. of Human Service Cooperative agreement number 4100070593. (xi) The

---

[32] Father's Exceptions were not filed within the proscribed time period in the Rules. Notwithstanding Father's failure to comply with the Rules, the undersigned did not dismiss them.

Officer erred in concluding that Mother is no longer unemployed. (xii) The Officer should have allowed Father's paying of property taxes to be credit. (xiii) The Officer failed to review and respond to Father's brief. The Officer erred in determining Mother's income, and that she was not able to find adequate employment. Father states that Mother charges $95 to $130 an hour for her dietician practice but is only awarded an earning capacity of $60k a year. (xiv) Father's financial information in the recommendation and order was incorrect. (xv) Father also cites numerous discrepancies between experience and degree level which would give wife a higher earning capacity. (xvi) The Officer erred in holding that Mother should receive post tax incentives and Father should pay taxes for the money received.

Argument on Father's Exceptions was held before the undersigned on January 18, 2024 following the timely submission of Father's Brief.

On January 29, 2024, the undersigned entered an Order dismissing Father's Exceptions. As noted in Section 12. of the aforementioned Order:

> "*In the current round of support litigation, the* **only material and substantial change in circumstances,** *from the Order entered by the undersigned on May 11, 2022 to the date that Mother filed her Petition to Modify on August 8, 2022, was the necessity to make the adjustment to the mortgage credit to Father (given Mother was moving out of the marital residence and Father was moving in."*
>
> [Emphasis in original].

This slight adjustment to the undersigned's May 11, 2022 Order, for the removal of the mortgage credit, could have easily been accomplished administratively had it been brought to the undersigned's attention at that time. Instead, in accordance with established procedure, Mother's Petition to Modify was held in abeyance by Domestic Relations pending the outcome of Father's Superior Court appeal.

-12-

This minor change, the removal of a credit, a mere 3 months after the issuance of the May 11, 2022 Order, does not warrant a change in the undersigned's determination of either parties earning capacity/income in that Order; *nor does it open the door for Father to advance the very same arguments he raised in the 2022 appeal just minutes after he withdrew that appeal.*

On February 23, 2024, Father filed a timely appeal of the January 24, 2024 Order to the Superior Court.

Father also filed an appeal to the undersigned's October 31, 2023 contempt Order in the parties' divorce matter. Father refused to sign the Qualified Domestic Relations Orders (QDRO's) required to assign Mother her interest in his pensions pursuant to their divorce settlement. The failure to promptly finalize the QDRO's could have serious consequences. Given pensions are governed by federal law, if either party had died prior to entering the QDRO's, the state court would not have any authority to rectify the problem. The sanctions imposed under the undersigned's October 31, 2023 Order directed that Father pay counsel fees of $500 and reimburse Mother for her lost wages for attending the contempt hearing. The appeal was ultimately quashed by the Superior Court. Once again, Father was self-representing and Mother was required to engage counsel to represent her (addressed further, in Section VII., "Counsel Fees", *infra*, of this Opinion)

. As will be demonstrated within this Opinion, and a comprehensive review of the procedural history of this case, this appeal represents the proverbial *"second bite of the apple"* by Father to re-litigate the very same issues he raised in his first appeal (which he withdrew after the undersigned filed an Opinion).

-13-

## ISSUES

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i), Father raised the following issues in his Concise Statement of Errors Complained of on Appeal:

1. This Honorable Court erred in dismissing Defendant's Motion to Dismiss and Motion to Continue which denial resulted in the denial of Defendant's due process rights when Plaintiff failed to cooperate with numerous Orders of this Honorable Court and with Defendant's numerous discovery requests.

2. This Honorable Court erred in upholding the support orders which are established, enforced and modified under the Pennsylvania Bureau of Child Support Enforcement Program, also known as the Title IV-D Child Enforcement Program in Pennsylvania.

3. This Honorable Court erred in upholding the support orders which do not benefit the children.

4. This Honorable Court erred in upholding the support orders which is in opposition to federal law, including without limitation the Child Support Enforcement Act, which is a violation of the Supremacy Clause of the United States Constitution.

5. This Honorable Court erred in upholding the support orders which is in opposition to United State Supreme Court caselaw, including without limitation, Sullivan v Stroop, 496 U.S. 478 (1990) which held, "The clear and unambiguous language of the statute demonstrates that Congress used "child support" throughout Title IV as a term of art referring exclusively to payments from **absent parents**. " [emphasis added]

6. This Honorable Court erred in upholding the DRHO's orders which ordered a Custodial parent to pay support when, 42 USC Section 651 provides that the purpose of 42 USC Section 651 locating Part D – Child Support and Establishment of Paternity Appropriation, Sec. 451[42 USC 651] "is to enforce the support obligations owed by **noncustodial** parents to their children and the spouse (or former spouse) with whom the children are living [and to obtain]. " Furthermore, The Superior court in Thomas v Thomas 739 A.2d 206, 214 (1999) found "Joint custody arrangements are favored by courts because the overall best interests of the children are met through the cooperation and continuity provided by both parents. However, once a joint custodial parent . . . " and the Commonwealth Court in Watts v. Manheim Township, No. 935 C.D. 2013 (2014) found that a school has to provide equal bussing to both parents who were both deemed to be custodial parents where they equally shared custody per the parties' custody order. [emphasis added]

-14-

7. This Honorable Court erred in upholding an order requiring a custodial parent to pay child support where the Pennsylvania Department of Human Services Cooperative Agreement between the Pennsylvania Department of Human Services and Montgomery County, agreement grant number 4100070593, specifically provides in part that the purpose is to "locate **non-custodial** parents . . . and to ensure that these functions are proper, efficient, effective and carried out as required by 45 CFR 303.20(c) in addition establishment of a support order . . . is accordance with the Ps. R.C.P. and 45 CFR 303.4. [emphasis added]

8. This Honorable Court erred in upholding the support orders which is in opposition to federal regulations, including without limitation 45 CFR 303.4 (b)(3) provides, "Basing the support obligation or recommended support obligation amount on the earnings and income of the **noncustodial**". [emphasis added]

9. This Honorable Court erred in upholding the support orders in opposition to Pennsylvania caselaw and Pennsylvania and United States Constitutions for equal protection.

10. This Honorable Court erred in upholding the hearing officer's calculation of husband's income including but not limited to the following reasons: DRHO erred in calculating the amount of support available from Father's bonus, the Hearing Officer erred in including the bonus prior to the claim for Child Support, which was already enjoyed by Plaintiff, the Support order includes the bonus twice as Plaintiff's financial portion of supporting the family was small prior to her filing for support and the responsibility rested mostly on Defendant.

11. This Honorable Court erred in upholding Hearing Officer's Order where the DRHO assessed an earning capacity of $60,000 salary to Plaintiff when Plaintiff's testimony was that she charged between $95 and $130 per hour in her private practice as a Registered Dietician and the Court did not use the $95 and $130 per hour earned as a private consultant to calculate Plaintiff's full-time earning capacity. Thus, Plaintiff is being held to a capacity less than she earned more than 15 years ago and without considering the present value of the earnings and the additional experiences and trainings she gained.

12. This Honorable Court erred in finding that there is justification for a support order where Defendant is a custodial parent.

13. The Honorable Court erred in determining that Defendant was a non-custodial parent and therefore owed child support simply because Defendant was found to have earned a higher income than Plaintiff.

14. This Honorable Court erred in upholding the DRHO orders which violated the Equal Protection Clause by allowing Plaintiff's earning capacity to be less than she earned in 2006 while Defendant is being held to present earnings.

-15-

15. This Honorable Court erred in upholding the DHRO orders in which the DRHO misstated and misrepresented facts in the case.

16. This Honorable Court erred upholding the DRHO findings where DRHO failed to consider that, during the hearing in from of the DRHO, Plaintiff acknowledged that she was qualified for management level positions.

## STANDARD OF REVIEW

The undersigned's standard of review in reviewing a Support Hearing Officer's recommendation and interim order is broad.

The standard of review, as a trial court, in reviewing the recommendation and order of a support master (Support Hearing Officer) has been thoughtfully analyzed and set forth by the Pennsylvania Superior Court in *Goodman v. Goodman*, 375 Pa. Super. 504, 544 A.2d 1033 (1988) as follows:

> "We first note that the findings of the DRHO were only advisory and not in any way binding on the trial court. *See* Pa. R.C.P. 1912, sections (d) (hearing officer shall file report containing recommendation with respect to entry of an order), (f) (absent exceptions, court shall review report and, if approved, enter a final order), and (g) (following argument on exceptions, court shall enter appropriate order. Because of the procedure followed under this Rule involves, 'in essence substantially a master's hearing, akin to a master's hearing in divorce, the cases addressing the use of a divorce master's report and recommendation are apposite to actions for support under this rule.' *See*, e.g. *McBride v. McBride*, 335 Pa. Super. 296, 484 A.2d 141 (1984). While such a report is to be given the fullest consideration, especially with regard to the credibility of witnesses, a trial court is required to review the report to determine if the recommendations are appropriate. *See Reed v. Reed*, 354 Pa. Super. 284, 511 A.2d 874 (1986). It is the sole province and the responsibility of the court to set an award of support, however much it may choose to utilize a master's report."[33]

---

[33] The subsections of Rule 1912 have changed slightly but the procedure remains the same.

-16-

With the foregoing mandate in mind, the undersigned carefully reviewed the record, Briefs and oral argument and found that the Support Hearing Officer filed an excellent report and recommendation, in conformity with all of the testimony offered at the record hearings before her.

As required by *Goodman*, the undersigned gave the fullest consideration to the Officer's Report. The Report was reviewed to determine if the recommendations are appropriate and found that they were.

This Court provides great deference to the fact-finder's findings in child support proceedings. Pennsylvania's Rules on child support are extensive, complex and contain many interrelated provisions. However, the Support Hearing Officers are experienced, knowledgeable, and well-versed with the Rules in the performance of their duties.[34] In addition, in arriving at findings, the fact-finder's assessment of the credibility of the parties is paramount because it is the fact-finder that sees and hears the witnesses testify. It is not this Court's function to substitute its judgment for that of the Hearing Officer.[35]

For these reasons, in applying the aforementioned law, the undersigned found that the Support Hearing Officer's Order was "appropriate" and proceeded to deny Father's Exceptions.

In addition, as noted *supra*, this represented the second round of support litigation just three months after the entry of the May 11, 2022 Order - on just a minor removal of a credit - and after the undersigned had already entered an extensive Opinion addressing all of Father's issues (in an appeal he withdrew).

---

[34] By way of example, the Support Hearing Officers in Montgomery County conducted approximately 1,000 record hearings in 2023. There were only 96 Exceptions filed, or .09%, during that same time period.

[35] *See Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa. Super. Ct. 2017) (en banc) ("In a non-jury trial, the factfinder is free to believe all, part or none of the evidence and a [reviewing court] will not disturb the trial court's credibility determinations.")

-17-

The Pennsylvania Superior Court is now called upon to review the undersigned's Order. The standard of review, in child support cases, is set forth in *Isralsky v. Isralsky*, 824 A.2d 1178 (Pa. Super. Ct. 2003) as follows:

> The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. For our purposes, "an abuse of discretion requires proof of more than a mere error of judgment, but rather that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality."[36]

It is submitted that, in exercising its scope of review as set forth in <u>Goodman</u>, this Court's finding was appropriate and not an abuse of discretion (meaning that the law was not misapplied or overridden or that the judgment was manifestly unreasonable based on bias, ill will, prejudice or partiality).

Accordingly, it is respectfully suggested that the undersigned's Order should be affirmed.

## ANALYSIS

I.   **The format of Father's "concise statement" should lead to waiver or partial waiver.**

Pennsylvania Rules of Appellate Procedure, Rule 1925, is intended to aid trial judges by providing enough focus on the legal issues which the appellant plans to raise on appeal. When the trial court has to guess what issues an appellant is raising, that is not sufficient for a meaningful review. A Concise Statement that is too vague, lengthy or repetitive impedes the trial court's preparation of a legal analysis, and subsequently, the Concise Statement is the functional

---

[36]   *See Isralsky* at 1186 (quoting *Portugal v Portugal*, 798 A.2d. 246, 249 (Pa. Super. Ct. (2002)).

equivalent to no Concise Statement at all. A vague or lengthy Rule 1925(b) statement ultimately results in a waiver of the issues.[37]

Here, Father's Concise Statement, listing sixteen errors complained of, is not "concise" by any means and is significantly repetitive throughout. The overall content and format of Father's Concise Statement makes it difficult to analyze the actual legal errors complained of in an organized fashion. While it is Father's right to appeal an Order he believes is incorrect, he must still abide by the procedural rules necessary to enable the Court to make a meaningful review of the issues in his case.

In addition, Father yet again uses his second appeal as a "soap-box" to express his disapproval of the Pennsylvania's child support system as a whole. The issues raised by Father in this second appeal are the same issues Father raised in his first appeal. The Court should not be required to re-address the same issues Father choose to withdraw previously.

Accordingly, due to the content and format of Father's Concise Statement, plus Father's raising of identical issues from his first appeal that he withdrew, Father's errors complained of should be deemed "waived" and Father's second appeal should be dismissed in its entirety.[38]

II.    **The Court did not err when it refused to dismiss Mother's Support Complaint for her purported failure to comply with discovery requests and the Officer's assessment of Mother's earning capacity.**

---

[37] *Raymond v. Raymond*, 279 A.3d 620 (2022) Fn. 6, "a concise statement, which is too vague or voluminous could lead to waiver." *See, e.g., Commonwealth v. Vurimindi*, 200 A.3d 1031 (Pa. Super. 2018); *see also Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa. Super. 2002) ("Even if the trial court correctly guesses the issues [an] appellant raises on appeal and writes an opinion pursuant to that supposition the issues [may] be waived.").

[38] *See S.S. v. T.J.*, 212 A.3d 1026, 1033-34 (Pa. Super. 2019) (Holding that Father's challenges to the trial court's order were waived due to its lack of specificity or coherence and in fact being a rambling narration causing the trial court to guess at the issues Father sought to preserve and raise on appeal).

Father's first, eleventh, fourteenth, and sixteenth errors complained of all pertain to the Officer's assignment of Mother's earning capacity and Father's unfounded allegations regarding discovery.

Father's disagreement with the assessment of Mother's earning capacity has been addressed numerous times in many proceedings by two different Hearing Officers *and* the undersigned. In addition, it was addressed in Father's first appeal, which he withdrew after the undersigned issued its October 27, 2022 Opinion, such that it should not be necessary for the Court to have to address it once again. *See*: Trial Court Opinion, pp. 13 – 16.

As in his 2022 appeal, in Father's first error complained of, he claims that his due process rights under the United States Constitution were violated when the Officer denied his Motion to Dismiss. He argues that the Court erred by not enforcing Mother's obligation to comply with numerous discovery requests. Father further argues that the Officer should have calculated Mother's earning capacity using an hourly income of $95-$130 that she made one time as a private dietician consultant over ten years ago. Father also claims, in his fourteenth error complained of, that his rights under the Equal Protection Clause were violated when the Officer held him to his present earnings while assigning what he believes is too low of an earning capacity for Mother. Finally, Father asserts in his sixteenth error complained of that the Officer should have considered the fact that Mother admitted she was qualified for management level positions.

At numerous instances to date, despite Mother's submission of numerous financial records, Father has argued that Mother failed to provide financial records going all the way back to 2014 which he needed to provide to a vocational expert. [39] Father ostensibly sought these records so they can be used in the calculation of Mother's earning capacity. He stated these records were

---

[39] *See* May 9, 2022 Order.

needed by a vocational expert in order to verify the number of clients Mother had, the hours she performed, and the amount she charged per hour.

The parties separated in 2019 and Mother's business went defunct in 2021. [40] Mother produced financial records for several years preceding her 2020 support complaint. Earning capacity is primarily decided by considering a parent's educational background, employment history, and the current job market as proscribed by the Rules. Additional financial records, going back seven years old and pertaining to a business that had been defunct for a year, are not relevant in the determination of Mother's current earning capacity; particularly when considering she has now had a different job for many years. Furthermore, any concern that Father may have regarding unreported income from mother's business was alleviated when his legal counsel (in the first round of litigation) indicated he would be receiving Mother's bank account statements from 2014 to present. [41]

The issue of Mother's earning capacity was already decided and supported by the undersigned's extensive Opinion of October 27, 2022. As noted, *supra*, after the Opinion was already issued, Father decided to withdraw the appeal which should constitute a waiver of the issue in the second appeal.

The Officer's finding to not hold Mother to an earning capacity based on her earnings as a private consultant from 8 years ago was, and still is, supported by the record. Furthermore, the undersigned fails to see the relevancy of Father's claim that his "due process rights" were denied when there have been numerous proceedings in this matter all of which Father has attended and had the opportunity to be heard. There was also no "Equal Protection Clause violation" simply

---

[40] *See* May 11, 2022 Order, Fn. 1.

[41] *See* May 9, 2022 Order

because Father's disagrees with the assessment of Mother's earning capacity at $60,000. The record supports the finding that Mother was a 44 year old with a Master's Degree who is also a registered and licensed dietician. [42] Mother stated she chose to make the career change to an insurance agent because the company offered benefits she needed for herself. [43] She further stated that she was unable to find a position in her prior field that offered her benefits which was the deciding factor in her career change. [44] The Officer also found that Mother testified credibly about her attempt to search for a job. [45]

Father's argument that Mother should be held to a significantly higher earning capacity is without merit and is clearly a "second bite at the apple" from Father's first appeal. Father argued that Mother's earning capacity should be set at between $112,500 and $153,000 per year even though Father's counsel during the initial round of support proceedings admitted that Mother never made this amount during her entire career. [46] During the hearing Father argued that Mother should be held to an income of $130 per hour or at $9,000-$10,000 per month. The Officer determined that setting Mother's income at $130 an hour, for 40 hours a week and 52 weeks a year, was unreasonable because that would require Mother to work every holiday and never have a sick day. It would further assume that she would have an unsustainably large client base due to her work schedule.

---

[42] *See* January 25, 2022 Recommended Order.

[43] *See* January 13, 2022 Notes of Testimony at p. 25-26.

[44] *Id.*

[45] *See* January 25, 2022 Recommended Order.

[46] *See* May 11, 2022 Order, Fn. 5.

-22-

Alternatively, the Officer found that holding Mother to an earning capacity based on that $9000-$10,000 monthly number was unreasonable because those earnings would be the most that Mother ever made in her now-defunct dietary business. Mother stated that this amount, while high, was never reached during the existence of her business. She further stated that with a self-employment business such as that, income can vary significantly in some months. [47] Mother testified that it no longer made financial sense to continue her business because she was not making any income from it. [48] A business that is no longer in existence should not cause Mother's earning capacity to become exponentially higher.

The Officer is the trier-of-fact and this court will not supplant its opinion over that of the Officer who was present at the hearing, heard all of the testimony, assessed credibility and weighed the evidence presented.

Rule 1910.16-2(4), "*Earning Capacity,*" provides as follows:

> When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity. The trier-of-fact shall base the party's earning capacity on the subdivision (d)(4)(ii) factors. In determining a party's earning capacity, the trier-of-fact shall consider the party's: (A) child care responsibilities and expenses'; (B) assets; (C) residence; (D) employment and earnings history; (E) job skills; (F) educational attainment; (G) literacy; (H) age; (I) health; (J) criminal record and other employment barriers; (K) record of seeking work; (L) local job market, including the availability of employers who are willing to hire the party; (M) local community prevailing earnings level; and (N) other relevant factors.

"A master's report and recommendation, although only advisory, is to be given the fullest weight and consideration." [49] The Hearing Officer makes such reports with the benefit of having heard and seen the witnesses, and "is entitled to great consideration," and should not be lightly

---

[47] *See* January 13, 2022 Notes of Testimony at p. 27.

[48] *Id.* at 40.

[49] *See Childress v. Bogosian,* 12 A.3d 448, 455-56 (Pa. Super. 2011)(citing *Moran v. Moran,* 839 A.2d 1091, 1095 (Pa. Super. 2003)).

disregarded.[50] The undersigned reviewed the hearing transcript and the Officer's recommendation which, yet a second time, demonstrated that Mother's age, education, prior earnings, and credible testimony for job searches were all considered in accordance with the Rules. Upon review, the undersigned determined that the Officer did not err in her determination. Further, the financial information that was provided by Mother was sufficient to calculate her earning capacity.[51] Any financial record from Mother's former business going back 2014, that Father believes was not provided in discovery, was not necessary in making this determination.

Lastly, Father's failure to comply with the production of his own income information during the proceedings would in-and-of- itself, justify the dismissal of Father's Exceptions on that basis alone. *See*: Section 16., Trial Court Memorandum, p. 3.

Therefore, it is respectfully suggested that the undersigned's Order should be affirmed.

**III.    Father's assertion that imposing a support obligation violates the Constitution, federal law and state law due to him having a shared custody schedule are without merit.**

Father's fourth, sixth, seventh, eighth, twelfth, and thirteenth errors complained of all relate to his status as a custodial parent.

This issue was also raised by Father in his first appeal and addressed by the Court extensively in its prior Opinion such that it should not be necessary to repeat it here once again. *See:* October 27, 2022 Opinion, pp. 17 - 25.

Father asserts that, due to having a 50/50 custody schedule, he should not be considered a "non-custodial" parent for the purposes of child support enforcement laws. He asserts that because of his schedule, the Court enforcing the support order violates the Supremacy Clause of the

---

[50] *See Rothrock v. Rothrock,* 765 A.2d 400, 404 (Pa. Super. 2000).

[51] *See* May 9, 2022 Order.

Constitution in relation to the federal Child Support Enforcement Act. He proffers that 42 U.S.C § 651 Authorization of appropriation establishes that the purpose of child support is to obligate only non-custodial parents to provide support for their children and former spouses. Further, Father states that the purpose of child support, pursuant to is interpretation of the Pennsylvania Department of Human Services Cooperative Agreement with Montgomery County consistent with 45 C.F.R 303.20(c), is that only non-custodial parents should be required to pay child support.

Father's reliance on the term "non-custodial parent" throughout both of his appeals, in relation to support laws that govern the responsibility for the payment of child support, is totally meritless. While it is true that the Act itself does not define the term "non-custodial parent," the context of how child support functions in Pennsylvania makes it clear that Father's reliance on the term in his appeals is unfounded.

In point of fact, in Father's thirteenth error complained of, which states *"The Honorable Court erred in determining that Defendant was a non-custodial parent and therefore owed child support simply because Defendant was not found to have earned a higher income than Plaintiff,"* is a complete misrepresentation as nowhere in either May 11, 2022 Order *or* the January 29, 2024 Order of is there any such determination. [52]

Child support is an equal responsibility between both parents meant to ensure that a child is cared for financially and to promote the child's best interests."[53] This responsibility is allocated between the parents based on their respective ability to provide for their children financially. [54]

---

[52] Notably, family court judges in family law cases rarely refer to a parent as a "non-custodial" parent. A parent who exercises custody, any form or degree of custody, is in fact a "custodial parent." *See* House Judiciary Committee, Subcommittee on Family Law, Testimony on H.B. 1397 *"Equality in Parenting Time."* December 9, 20192, www.legis.state.pa.us.

[53] *See Yerkes v. Yerkes*, 573 Pa. 294, 297 (2003).

[54] *Id.*

The primary goal is to *"provide minor children the same proportion of parental income that they would have received if the parents lived together."*[55]

The Family Support Act of 1988 mandated that all states have statewide child support guidelines in order to foster uniformity. [56] Pennsylvania has complied with this mandate by enacting their own statewide guidelines by Supreme Court Order dated September 6, 1989 (and effective September 30, 1989). [57] States are federally mandated to review Support Guidelines extensively every four years. The most recent updates of the Support Guidelines were effective January 1, 2022. [58] Pennsylvania's Support Guidelines are based on the Income Shares Model, which was created with the goal of providing a child with the same proportion of parental income regardless of whether their parents are together or divorced. [59] As of 2021, 41 states use the income shares Model as the basis for their support guidelines. [60]

The Pennsylvania Rules of Civil Procedure outline how to calculate child support payments and the primary factor is the relative incomes of each parent.[61] The Guidelines are intended to

---

[55] *Dalton v. Dalton*, 409 Pa. Super. 258, 261 (1991); Pa.R.Civ.P. Rule 1910.16-1, Explanatory Comment A, 42 Pa.C.S.A.

[56] *See* Pa.R.C.P No. 1910.16-1, Explanatory Comment 2010.

[57] *See* 23 Pa.C.S. § 4322.

[58] *See* Pa.R.C.P. No. 1910.16-1(e). For over 35 years, since 1989, Pennsylvania's support guidelines have been in place and have been the "settled law" of the Commonwealth. A constitutional challenge to the guidelines, as asserted in this case is, on the one hand, spurious, and, on the other, a significant financial burden to Mother (to have to defend this appeal).

[59] *See* Jane Venohr, *Review of the Pennsylvania Child Support Guidelines: Updated Schedule and Findings from Analysis of Case File Data*, Center for Policy Research, pg. 52, (Revised September 16, 2021), https://www.pacourts.us/Storage/media/pdfs/20210916/184842-2019guidelinereviewreport.pdf.

[60] *See Id.*

[61] *See* Pa.R.C.P. No. 1910.16-4.

promote uniformity by treating similarly situated families in a similar manner. The Guidelines amount is presumably the appropriate support award. [62]

Pennsylvania's Support Guidelines do, in fact, make adjustments to the support obligation of a parent based on a shared custody schedule that is observed. Particularly, the guidelines will adjust – not eliminate – support obligations when a parent exercises more than 40% of the overnight custodial time. Notably, this is not the case in all of the states as some do not provide for any adjustment for a shared custody schedule. In Pennsylvania, however, a parent with a 50/50 custody schedule, as in this case, will most definitely receive a downward adjustment. [63] In this particular case, Father received a reduction in his support obligation in every single Order that has been entered (a reduction in the amount of $575 a month is reflected in the Order now subject to this second appeal). [64]

If the Pennsylvania Supreme Court thought it important to include a downward adjustment based on custodial time in its support calculations, then surely they would not have contradicted themselves by then intending to not impose support obligations on parents who have a 50/50 custody schedule. On this basis, Father's assertion that it was an error to consider him a "non-custodial parent" is obtuse and nonsensical.

Notably, the term "non-custodial parent" is not a term that is used when determining a parent's support obligations. Upon review of the Support Rules, different terms are used to denote the individual who must pay support. These terms include "obligor," "defendant, "party," and

---

[62] See 23 Pa.C.S. § 4322.

[63] See Pa.R.C.P. No. 1910.16-4(c), "Substantial or Equally Shared Physical Custody," See also Explanatory Comment 2005: When there is equal time sharing subdivision (2) reduces the support obligation further so that the obligor does not pay more than is necessary to equalize that parties' combined monthly net income.

[64] As noted supra, all of the credits Father received in the Order subject to Father's first appeal resulted in only a $162.10 monthly support obligation.

"parent." In fact, the section of the Support Guidelines that provide for an adjustment based on a party having shared custody uses the term "*obligor.*" [65] The term "non-custodial parent" **never** appears in the support rules.

Father relies on the term "non-custodial" as it appears in the federal child support *enforcement* statutes which is not relevant to this case. Those statutes are in fact meant for absent parents. The Title IV-D program was enacted by Congress to improve *enforcement* of child support, particularly for absent parents. [66] However, the *enforcement* of child support is a different issue entirely than the *establishment* of child support as is at issue here. The establishment of child support is determined using the very specific formula set forth in the Support Guidelines.

The Pennsylvania child support laws ensure that, due to father's significantly higher income, he is required to provide a portion of this net income to Mother to help assist her in meeting their children's needs while they are in her custody. The best interests of the children will be met by ensuring that Mother has adequate financial resources to care for the children while they are in her custody and that is exactly what is accomplished when the undersigned entered the Order to formalize Father's support obligation.

Imposing a child support obligation on a parent who has 50% shared custody is actually preferred by many policy makers. [67] Not only does Pennsylvania enforce support obligations on parents who have 50% custody, other states do as well. [68]

---

[65] *See* Pa.R.C.P. No. 1910.16-4(c).

[66] *See* Senate Report No.93-1356, *as cited in*, the Pennsylvania Rules of Civil Procedure, Actions for Support, Explanatory Comment.

[67] *See* Marygold S. Melli & Patricia R. Brown, *The Economics of Shared Developing an Equitable Formula for Dual Residence*, 31 Hous. L. Rev. 543, 559 (1994).

[68] *See* Jane Venohr, *Review of the Pennsylvania Child Support Guidelines. Updated Schedule and Findings from Analysis of Case File Data*, Center for Policy Research, pg. 34, (Revised September 16, 2021).

Pennsylvania is one of several states that make adjustments to support, but do not eliminate the obligation, in their guidelines when a parent has shared custody of their children. By way of example, the states surrounding Pennsylvania make such adjustments, including New Jersey,[69] New York,[70] and Ohio. [71]

In this case, the Officer considered Father's custodial schedule and, in accordance with the Rules, proceeded to apply a downward adjustment to Father's monthly child support obligation in the amount of $575.

The case *Colonna v. Colonna* further clarifies the function of support obligations in Pennsylvania. [72] In that case, the father and mother shared a temporary 50/50 custody schedule. [73] During this temporary schedule, the father was ordered by the court to pay $6,132.00 per month in support obligations (which was later reduced top $3,132.00 per month). [74] This support obligation was based primarily on the vast income disparity between the parties. [75] After that, the trial court granted the father primary custody of the children. [76] The father then sought to eliminate his support obligations entirely due to his acquiring primary custody of their children 73% of the time. [77] The trial court ordered the father to pay $810 per month as a support obligation

---

[69] *See* New Jersey Rules of Court Appendix IX-A Considerations in the Use of Child Support Guidelines, https://www.njcourts.gov/attorneys/assets/rules/app9a.pdf.

[70] *See NYSBA Child Support Determining the Amount Under the Child Support Standards Act (CSSA)*, Committee on Children & The Law, pg. 3 (Revised 2011).

[71] *See* Ohio Rev. Code Ann. § 3119.24.

[72] *See Colonna v. Colonna*, 581 Pa. 1 (2004).

[73] *Id.* at 2.

[74] *Id.* at 3.

[75] *Id.*

[76] *Id.*

[77] *Id.*

notwithstanding his new status as primary custodian. [78] The Superior Court reversed this Order, stating that due to his status as primary custodian, he was not obligated for child support purposes. [79]

The Pennsylvania Supreme Court reversed this decision. [80] The Court noted that custody and support laws work in tandem in order to reach the best interests of the child. [81] This may result in a custodial parent having to pay support in order to alleviate the lifestyle disparity when living with a parent with significantly less than the other. [82] The Court concluded that a parent with primary custody may be ordered to pay child support obligations. [83]

*Colonna* shows by way of example that simply having a substantial amount of custody time of a child does not exempt a parent from child support obligations. As stated above, the father in *Colonna* not only had custody of his children, he had *primary* custody, and the Pennsylvania Supreme Court concluded that that would not in-and-of-itself exempt him from support obligations.

In the case at bar, Father is enjoying a 50/50 custody schedule with Mother. As was the case with *Colonna*, his status as a parent with this shared custody schedule is not grounds to exempt him from his support obligations.

---

[78] *Id.* at 5-6.

[79] *Id.* at 6.

[80] *Id.* at 9.

[81] *Id.* at 7.

[82] *Id.*

[83] *Id.* at 9.

-30-

The only case Father cites in support of his proposition, that he should not be considered a non-custodial parent due to his 50/50 custody schedule, is *Watts v. Manheim Township*. Father states that *Walls* decided, "that a school had to provide equal bussing to both parents who were both deemed to be custodial parents where they equally shared custody of the parties' custody order." [84] The court in the *Watts* case determined that, due to the fact that the mother and father shared 50/50 custody of their children and lived close together in the same school district, the child had two different residences in the district and the school had to provide transportation to both. [85] Father's reliance on this case is entirely misguided as it has absolutely nothing to do with child support. Whether a parent is deemed a custodial parent for after-school bussing services has no bearing on whether the best interests of their child will be served by imposing a support obligation on the parent which, as stated above, is the primary focus of all child support.

To conclude, Father's assertion that he should not be forced to pay child support because he has 50/50 custody is without any merit. Many parents in Pennsylvania, and throughout the United States, who have 50% custody of their children have to pay child support. Father in this case is not an exception. It was not an error for the undersigned to impose a child support obligation on Father even though he has shared custody.

Therefore, it is respectfully suggested the undersigned's Order should be affirmed.

---

[84] *See* Defendant's Statement of Errors July 18, 2022.

[85] *See Watts v. Manheim Twp. Sch. Dist.*, 84 A.3d 378, 390 (Pa. Commw. Ct. 2014).

-31-

**IV.    This Court did not err when it upheld the Hearing officer's decisions regarding Father's income.**

Father's tenth, fourteenth, and fifteenth errors complained of relate to the Officer's calculation of his income which were also raised in Father's first appeal and addressed by the Court in its extensive October 27, 2022 Opinion. *See:* Trial Court Opinion, pp. 25-25.

Preliminarily, we note the following as set forth in the Officer's Findings:

> *The parties are instructed to submit their [financial] information seven days prior to the scheduled virtual support proceeding (C-1). Additionally, a notice went out to all parties on August 21, 2023 providing them with the document download link and reminding them to submit their documents to the court (C-2). Father did not submit any documents for the Domestic Relations Conference, which was held in July. Father also assumed this matter was complex and indicated he was looking for discovery of some sort, However, Father did not file a motion to designate the matter as complex post conference in July as required, nor did he file any discovery requests. Father's submission of documents 15 minutes prior to the record hearing was untimely and prejudicial to Mother.*[86]

Father's failure to provide his financial information, given his familiarity with the Rules (having just been through the exact same process not once, but twice, during the two years prior) should in-and-of-itself justify the dismissal of Father's argument on this issue on that basis alone.

As stated throughout this Opinion, Father is appealing identical issues that he raised in his first appeal, which he ultimately withdrew, such that it should not be necessary for the Court to address once again. Father's disputed issues in his first appeal became the *"law of the case"* when he withdrew his appeal.

Nevertheless, we will proceed to address the same issues here for completeness of our analysis in this matter.

---

[86] September 11, 2023, Officer's Findings of Fact, p. 1-2

-32-

Father's main complaint, in his fifth error complained of, pertains to a bonus he received in 2019 and factored into the first support Order in this case in 2021. Next, Father's fourteenth error complained of states that this was a violation of the Equal Protection Clause to hold him to present earnings while Mother was held to an earning capacity.

During his first appeal, as in this second one, Father claimed that his 2019 bonus was improperly considered when calculating his income. The hearing testimony previously indicated that Father's income was calculated, including the bonus, as $142,581.[87] The same methodology, to include bonuses as income, is routinely used in child support matters and was used within the present Recommendation that the undersigned affirmed in his January 29, 2024 Order.

As stated by the Hearing Officer in the previous hearing, should there be a drastic downward shift in Father's income, his recourse would be a Petition to Modify, to seek a reduction in his child support obligation.

In turn, the same methodology used to determine Father's 2021 income was utilized by the Officer to determine his income in the September 11, 2023 Recommendation (which was $161,870). [88] There is no "equal protection" issue here: Father is being treated as any other litigant, male or female, with the inclusion of a bonus as income.

It is also well within the purview for a support hearing officer to utilize different means of calculating parties income for support purposes where one party has actual income and another is being imputed an earning capacity. Therefore, no discrimination is present and Father's Equal Protection argument has no merit.

---

[87] See January 13, 2022 Notes of Testimony at p. 59.

[88] See September 11. 2023 Recommendation.

Further, as noted *supra*, Father failed to file a request to deem this matter complex, or to file for discovery, in accordance with the Rules such that both of those claims should be deemed "waived".

Therefore, it is respectfully suggested that the undersigned's order should be affirmed.

## V.      Father's Concise Statement does not clearly state the errors he asserts the Court committed.

In his fifteenth error complained of, Father states that the Officer "misstated and misrepresented facts" in his case.  However, he does not specify what facts were misrepresented nor how they effected the resulting support order.

Father's pattern of vagueness continues where he states, in his third matter complained of, that *"This Honorable Court erred in upholding the support orders which do not benefit the children."* [89]  Father does not specify what is intended by this statement, nor does he cite to any relevant legal authority, which point to how the Support Order does not benefit the children.

In his ninth matter complained of he states: *"This Honorable Court erred in upholding the support orders in opposition to Pennsylvania caselaw and Pennsylvania and United States Constitutions for equal protection."* [90]  This Opinion has already addressed how the undersigned's Order, and the legal process which yielded the Recommendation from the Support Hearing Officer, clearly demonstrate that there is no violation of the Equal Protection Clause, in either the Pennsylvania or the United States Constitutions.  Additionally, the relevant case law at issue was addressed *supra*.

Father had a full opportunity, during three rounds of support litigation, to argue his position in front of two different support Officer's and again on the Exceptions before the undersigned.

---

[89] *See* Defendant's Statement of Errors March 29, 2024.

[90] *Id.*

Based on all of the testimony and evidence presented, the Officer recommended that Father make support payments of $1,019 per month. As stated above, after reviewing the recommendation and the transcript and being extremely familiar with the matter from the prior round of litigation, the undersigned was satisfied that the Officer fully and faithfully carried out her duties and in no way misstated or misrepresented facts.

As indicated in Section I., *supra*, Pennsylvania Rules of Appellate procedure, Rule 1925, is intended to aid trial judges by providing enough focus on the issues in which the parties plan to raise on appeal. When the trial court has to guess what issues an appellant is raising, that is not enough for meaningful review. A Concise Statement that is too vague impedes the trial court's preparation of a legal analysis, and subsequently, the Concise Statement is the functional equivalent to no Concise Statement at all. A vague Rule 1925(b) statement ultimately results in a waiver of the issues. [91]

Here Father's Concise Statement fails to clearly delineate the errors he asserts the Officer made in misstating and misrepresenting the facts in the case. Additionally, Father states that the current Recommendation and Order is not in the children's best interest. However, as indicated *supra*, Pennsylvania's support law ensures that children are "*provide[d] . . . the same proportion of parental income that they would have received if the parents lived together,*" as being in their best interest. [92]

---

[91] *Raymond v. Raymond*, 279 A.3d 620 (2022) Fn. 6.

[92] *Dalton v. Dalton*, 409 Pa. Super. 258, 261 (1991); Pa.R.Civ.P. Rule 1910.16-1, Explanatory Comment A, 42 Pa.C.S.A.

Without adequate specificity or coherence, the Court is without the ability to make a meaningful review of these arguments. Accordingly, Father's third, fifteenth, and a portion of his ninth error complained of should be deemed "waived."

Therefore, it is respectfully suggested that the undersigned's Order should be affirmed.

**VI.  The undersigned, and the Montgomery County Court of Common Pleas, is the proper body in which to reverse or uphold a Hearing Officer's Order and Recommendation.**

In Father's second matter complained of he states: "*This Honorable Court erred in upholding the support orders which are established, enforced and modified under the Pennsylvania Bureau of Child Support Enforcement Program, also known as the Title IV-D Child Enforcement Program in Pennsylvania.*" [93]

Stating this, it appears as though Father believes that the Hearing Officer, as well as the undersigned, are not the appropriate judicial officers to preside over support matters.

Once again, Father cites as his authority child support *enforcement* programs which are not relevant to the establishment of a support Order.

The process of establishing child support, and how much one parent is to pay to another parent, is specifically set forth by the legislature via statute and by the Supreme Court via Rules.

It has nothing to do with the child support enforcement programs.

Father's arguments on this issue was extensively addressed in the undersigned's October 27, 2022 Opinion, in Father's first appeal, such that it should not be necessary for the Court to have to address it again.

Therefore, it is respectfully suggested that the undersigned's Order should be affirmed.

---

[93] *See* Defendant's Statement of Errors March 29, 2024.

## VII.  COUNSEL FEES

In this second appeal, Father attempts to re-litigate the very same issues that were established in the undersigned's support order of May 11, 2022.

Father appealed that Order.

The undersigned issued an extensive Opinion addressing all of Father's issues in a 26 page Opinion.

Father withdrew the appeal at which point his disputed issues became the "law of the case".

Mother's Petition to Modify a mere three months after the May 11th Order was entered, simply to remove a credit Father received in the May 11, 2022 Order, does not provide the basis to re-litigate all of the same issues Father raised once again after he withdrew this first appeal.

Notably, in this third round of support litigation, Father has been self-represented while Mother has been compelled to engage legal representation and to pay attorney fees.

A significant dynamic in Family Court, occurring in ever more frequency, presents itself where self-represented litigants file and refile pleadings and appeals in an attempt to re-litigate the same issues. In many cases, as with this one, the same issues are being litigated within mere months of the last set of proceedings.

The result is to drain an already heavily burdened family docket which, in turn, impacts judicial time to devote to other family cases facing significant issues.  It also represents an underlying strategy whereby a self-represented litigant forces the other parent to expend funds on legal fees to "wear them down" financially.  It is also worth noting that, in this case, Father first appealed a support Order of just $162.10 a month for two children.

By the time the Plaintiff in a child support case pays an attorney for representation, the child support that ultimately reaches their kitchen table is whittled down to possibly nothing.

-37-

There is also the increasing frequency of self-represented litigants in family court cases, as here, to raise unmerited constitutional arguments on settled aspects of law (i.e. Pennsylvania's child support guidelines that are *federally mandated* and in place now for over 35 years).

In this case, Father's Concise Statements, in both appeals, are virtually identical. There was already an extensive, 26 page, Opinion on Father's issues which he entirely/defiantly ignored raising the very same meritless issues once again.

Without any consequences for this obdurate conduct, both the Court and the other parent are at the mercy of self-represented litigants for "groundhog day" litigation.

In order to prevent Father from this constant frivolous litigation, there is the necessity for the imposition of sanctions; specifically that of counsel fees.

In *Suzanne D. v. Stephen W.*, the Superior Court upheld an award of attorney's fees by the trial court; there, the obligor, having not incurred any legal fees in the support action, was found by the trial court to have extended the litigation to the detriment of mother's financial ability to support the children. [94]

Factors to be considered when awarding legal fees include whether the conduct of the obligor impeded entry of a final support order and whether the obligor presented a reasonable defense. [95]

In the case at hand, just as in *Suzanne D.*, the same circumstances are present that would make an award for attorney's fees to Mother reasonable. Mother, already at a significantly lower income level than Father, is forced to retain counsel and defend yet additional Exceptions and yet another appeal identical to the first one.

---

[94] *Suzanne D. v. Stephen W.*, 65 A.3d 965, 975 (Pa. Super 2013).

[95] *See Id.* at 975.

-38-

The law regarding attorney's fees in Pennsylvania states that *"if an obligee prevails in a proceeding . . . to obtain a support order, the court may assess against the obligor . . . reasonable attorney fees . . . incurred by the obligee."* [96]

Note that *"[e]ven when the obligee prevails counsel fees are not automatic, but instead are contingent upon discretion of the court."* [97] In using said discretion, the Court must consider *"the totality of relevant circumstances that informs the determination of whether to award counsel fees."* [98]

In the case at hand, Father is now on his third appeal; two in the support matter and one in the divorce case. This second support appeal mirrors the exact same issues that he raised previously, causing the undersigned to issue an extensive 26 page Opinion to address the same misguided constitutional issues and inapplicable federal child support enforcement law.

The award of counsel fees in this matter would be predicated less on Father's non-retainer of counsel, but rather on the needlessly repetitious nature of Father's arguments that have already been addressed. [99]

Accordingly, provided that this Court agrees with this analysis, the undersigned takes the unusual step of requesting that the matter be remanded for the sole purpose of assessing Father's reimbursement of the counsel fees that Mother has been forced to unnecessarily incur to defend in this matter (with Father's repeated re-litigation of unmerited and irrelevant arguments).

---

[96] 23 Pa.C.S.A. § 4351(a).

[97] *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (Pa. 2002).

[98] *Id.* at 836.

[99] *See* October 27, 2022 Trial Court Opinion.

-39-

This may serve as an effective deterrent for prospective vexatious conduct by Father both in this case and for other self-represented litigants who engage in the same behavior in other family court cases.

## CONCLUSION

For all of the reasons set forth above, this Court respectfully requests the undersigned's Order of January 29, 2024 be affirmed.

BY THE COURT:

DANIEL J. CLIFFORD, J.

**Copies sent via Prothonotary to:**
Anthony D Difiore, *Esquire*
Matthew Baumert, *Pro Se*

**Copies sent via Chambers to:**
Court Administration – Family (*Interoffice*)

Judicial Assistant

-40-